### UNITED STATES v. KEARNEY et al.

(Circuit Court, N. D. Iowa, W. D. June 24, 1902.)

1. POSTMASTER—LIABILITY FOR RENTS RECEIVED—SUBLETTING PORTION OF POST-OFFICE PREMISES.

An action was brought by the United States against a postmaster on his bond to recover a sum which the petition alleged defendant had received from the subletting of a portion of the room used as a post office during his term in excess of the rent paid by him after deducting therefrom the allowance made him by the department for rent. It appeared that after defendant's term expired, and after his accounts had been audited and settled, the department charged back to him a part of the allowance which had been made to him for rent, which constituted the sum sued for. It also appeared that the allowance originally made him was not excessive for the portion of the premises occupied for post-office purposes, and that the rent paid by him for the entire premises largely exceeded such allowance. *Held*, that the government was not entitled to recover in the absence of evidence showing that defendant actually received from the portion of the premises sublet rents which, together with the allowance, exceeded the amount paid by him.

Action against Robert E. Kearney as principal and the other defendants as sureties on a postmaster's bond. Jury trial waived, and case submitted to the court on the law and the facts.

#### Findings of Fact.

From the evidence submitted the court finds the facts to be as follows:

(1) That on September 7, 1893, the defendant Robert E. Kearney was appointed to the position of postmaster at Sheldon, O'Brien county, Iowa, and,

as required by law, he executed an official bond, with Joseph Shinski, Martin C. Howard, and Edward C. Brown as sureties thereon, conditioned for the faithful performance of his duties; a copy of said bond being attached to the petition filed in this case, the same being made part of this finding of fact.

(2) That said defendant Kearney entered on the duties of his office as postmaster at Sheldon, Iowa, and continued in the performance thereof up to October 9, 1897, and under date of February 18, 1898, his postal account was audited up to October 9, 1897, by the auditor of the post-office department, and a balance found due from said Kearney in the sum of $7.93 for which a draft was drawn upon said Kearney, and was by him paid on the 24th day of February, 1898.

(3) That under date of November 10, 1893, the said Robert E. Kearney entered into a written lease with W. H. Sleeper for certain premises described as "the room in the first floor of the brick building on lot 13 in block 13 in Sheldon, Iowa, and the north forty feet of the cellar under said room," for a term of four years, beginning on September 1, 1893, and terminating on the 1st of September, 1897, the rental to be paid being the sum of $2,640 for the term, payable monthly, it being also provided in said lease that "permission is granted to sublet such premises, and also that, if the department should furnish building, or allow sufficient rent to rent building separate from any other business, then this lease is void."

(4) For some years previous to the appointment of defendant Kearney as postmaster, the post office at Sheldon, Iowa, had been kept in the room leased by said Kearney as above stated, and portions of the room had been leased to and used by third parties in carrying on the business of selling stationery, newspapers, and other like matters.

(5) That under date of August 2, 1893, in response to the request of the post-office department, the defendant Kearney submitted estimate of amounts needed for rent, fuel, and light for one year for the Sheldon post office, as follows: Rent, $660; fuel, $35; light, $35,—total, $730; and in response thereto, under date of October 5, 1893, the department notified said Kearney that "the annual allowance for expenses of rent, fuel, and light for your office have been fixed as follows from Oct. 1, 1893: Rent, $300; fuel and light, $58,—total, $358."

(6) That under date of May 5, 1896, the defendant Kearney made answers to questions addressed to him by the department in the form following:

"May 5, 1896.

"Sir: In compliance with your request, I beg to submit for your consideration the following estimate of amounts absolutely necessary for rent, fuel, and light for this office, namely:

| | | |
|---|---|---|
| Rent................................................ | $360 00 per annum | |
| Fuel................................................ | 37 00 " " | |
| Light............................................... | 48 00 " " | |
| Total....................................... | $445 00 per annum | |

"Carefully answer the following questions:
"1. Who owns post-office premises? W. H. Sleeper.
"2. What annual rent is paid for room? $660.00.
"3. Is building frame or brick? Brick.
"4. What are dimensions of same? 90x24.
"5. Is any other business carried on in same room with post office? Yes.
"6. If yes, state nature of such business, and space occupied, giving dimensions? News stand, jewelry, confectionery, stationery, etc.
"7. Who receives rent for space sublet? Postmaster.
"8. When did tenant move into lobby? The lobby has always been occupied by same line of business.
"9. Give gross receipts of your office for four quarters ended March 31, 1896. $6,582.07.
                    "Very respectfully,                    R. E. Kearney, Postmaster."

(7) That under date of September 5, 1896, the department addressed to the defendant Kearney the following communication and received the following answer:

"September 5, 1896.

"Subject: Rent.

"Sir: You are requested to answer as accurately as possible, without incurring any expense to the department, the following questions, on this sheet, and to return it to this office at once.

"Very respectfully,     F. H. Jones, First Asst. Postmaster General.

"To Postmaster, Sheldon, Iowa.

"Inquiry.

"You are requested to submit diagram of P. O. premises showing arrangement, giving dimensions. What annual rent is received for space sublet?

"Answer.

"P. O. situated cor. 9th St. & 3d Ave., the two business sts. of the city. Dimension 90x24 ft. Annual rent rec'd for space sublet not to exceed $300.

"R. Kearney, Postmaster."

(8) That under date of October 2, 1896, the department addressed the following communication to the defendant Kearney, and received the following reply:

"October 2, 1896.

"Subject: Rent.

"Sir: You are requested to answer as accurately as possible, without incurring any expense to the department, the following questions on this sheet, and to return it to this office at once.

"Very respectfully,     W. H. Lamar, Act'g Asst. Postmaster General.

"To Postmaster, Sheldon, Iowa.

"Inquiry.

"Furnish diagram P. O. room, showing plainly arrangement of room, location of P. O., and other business, giving dimensions. What amount of rent have you received for space sublet during your term of office? When did tenant or tenants move into room with P. O.? A full report is desired."

"Answer.

"Sheldon, Iowa, Oct. 6, 1896.

"First Asst. P. M. General, Washington, D. C.—Dr. Sir: The dimensions of the room are ninety feet long and twenty-four feet wide. The P. O. is thirty feet in rear of building, the store sixty feet in front part. The front part has always been occupied by a tenant. In regard to space sublet would say that when I took charge of the office the space was occupied by two brothers, who agreed to give me $45 per month for space. Accordingly I made· a four-year contract for the building at $55 per month. In a few months both brothers died. The stock was sold. The purchaser not wishing to occupy the room, I then got a man to go into partnership with me, he to pay $25 and I $30. I was also to employ a man to work against him. I ·have not at any time received from the business sufficient to pay the man one-half his salary. So in my former letter, when I said $25 per month for space sublet, I think I put it far above the actual amount received.

"Respectfully yours,     R. E. Kearney, P. M."

(9) That by direction of the department Inspector F. P. Maher was sent to Sheldon to investigate the situation connected with the rental of the post office at that place, and under date of February 8, 1897, he made the following report thereon:

"Feb. 8, 1897.

"Major J. E. Stuart, P. O. Inspector in Charge, Chicago, Ills.—Sir: I have the honor to return herewith case of above number, #225,133-C, relating to 'Amount of rent for lobby collected by the P. M. at Sheldon, Iowa, in excess of rent paid for entire P. O. premises,' with report of personal investigation this day. The post office is located in the rear portion of a store in a two-story brick building, on what is known as the principal business corner of the town. When the present P. M. took possession, the front part of the store was occupied by two brothers as a jewelry and stationery store. The P. M. leased the entire store for $55 a month, and sublet the front part

for $45. The P. M. sought a building which could be used entirely as a post office, but, owing to an intense rivalry between business men on two streets, a protest was raised, and he concluded to remain in the old quarters. The office is now on the intersecting corner of these rival streets, with entrance from each, and 'peace prevails.' It is an ideal location, being the center of business, and about equally distant from two stations. About five months after the lease was signed, both proprietors of the jewelry business died within two weeks of each other, leaving the lease on the P. M.'s hands. In order to protect himself, he formed a partnership, and assumed the business. He devotes practically none of his time to the business, but hires a clerk to attend to his part of the business, at a salary of $30 per month. He insists his share of the revenues has not been sufficient to pay the salary of the clerk, and he consequently pays a portion of it from his income as P. M. In times of ordinary business prosperity, $45 a month would not be exorbitant for that portion used for mercantile purposes. I learned from the former P. M that when he leased the place for post-office purposes he did so at the rental of $45 a month, and then sublet the front part for this amount, leaving the department allowance unexpended. The amount of the allowance by department for rent now is $300 per annum, or $25 per month. The P. M. pays $55, and charges $45 per month for store space. This would leave but $10 to pay for space used for post office. The P. M. is of the opinion that, as he received no profits from the store, and it is necessary to rent space in order to make up the excess of allowance, he was justified in claiming the amount of allowance. He also stated his predecessor received the full amount of allowance, and was not required to pay it as rent, he receiving the full amount of rent from the tenants. I therefore respectfully submit the advisability of reducing the rent allowance from $300 to $120 per annum, the amount in excess over that received from tenant.

"Very respectfully,        F. P. Maher, P. O. Inspector."

(10) That under date of June 7, 1897, the department addressed a communication to the defendant Kearney, as follows:

"June 7, 1897.

"Sir: You are hereby informed that the allowance for rent, fuel, and light for the post office at Sheldon, Iowa, has been fixed as follows, to date from June 1, 1897:

Rent.............................................. $120 per annum
Fuel..............................................   58  "     "
                                                  _____
Total........................................... $178  "     "

"Very respectfully,        E. C. Fowler, Acting First Asst. P. M. Gen'l."

(11) That it is not shown that the defendant Kearney, during the period he was postmaster at Sheldon, Iowa, has received in rentals or otherwise from the room in part occupied by the post office an amount in excess of the rental by him paid for said premises under the terms of the lease from W. H. Sleeper.

H. G. McMillan, U. S. Dist. Atty.

W. D. Boies, for defendants.

SHIRAS, District Judge (after stating the facts). In the petition filed in this case, after reciting the appointment of the defendant Kearney as postmaster at Sheldon, Iowa, and the giving of his official bond, it is averred that the condition of the bond has been broken, in that said Kearney was allowed by the post-office department to expend for rent from October 1, 1893, to May 31, 1897, the sum of $300 per annum, and from May 31, 1897, the sum of $120 per annum; that while he, the said defendant Robert E. Kearney, was such postmaster, beginning with October 1, 1893, and ending with October 9, 1897, at Sheldon, county of O'Brien, state and district

as aforesaid, he rented premises in part of which the post office was located, during the whole period in which he was such postmaster, at the rate of $660 per annum, and that he sublet such parts of said premises so rented by him as were not occupied by said post office, and received rent from such sublettings; and that the amounts received from such sublettings, added to the amount he was allowed by the department for rental, was in excess of the amount paid by him for the rent of the premises during the time he was postmaster, such excess amounting to the sum of $610.85, and which sum he has not paid or accounted for, and judgment for this amount is prayed against Kearney and his bondsmen. The difficulty with the case of the government is that the evidence does not show that Kearney received for the use of the premises by him leased from W. H. Sleeper, including the rental allowance from the government, an amount in excess of the rent he was obliged to pay to his lessor. The utmost that can be claimed is that he should be held accountable for the sum of $300 per annum, in accordance with the statements made by him in his letter to the department in reply to letter of September 5, 1896, and, adding this amount to the allowances made by the government, it would show that up to May 31, 1897, Kearney received in all the sum of $600 per annum, and from that date to October 9, 1897, he received rental at the rate of $420 per annum, whereas the rental by him paid to his lessor, W. H. Sleeper, during the whole of this period was at the rate of $660 per annum. It is not charged in the petition that the allowances made by the government for rental were excessive, and that the allowance had been wrongfully obtained through any wrongdoing on part of the defendant Kearney, but the basis of the claim made is that the amount received by him from the sublettings, added to the allowances of $300 and $120 made by the department, exceed the rental paid by Kearney in the sum of $610.85, and this sum he has failed to account for. As already said, the evidence fails to show that the rental from the sublettings, added to the allowances from the government, ever equaled the amount of rental Kearney was obliged to pay, and therefore it is not proven that Kearney has failed to account for any moneys by him received for the use or benefit of the United States.

If I correctly interpret the action taken by the department, as gathered from the letters put in evidence, after the receipt of the letter from Inspector Maher the allowance for rental was reduced to $120 per annum, as shown by the letter of June 7, 1897; but by such action the department did not attempt to change the allowance of $300 previously made, and the more that allowance is reduced the more clearly is it shown that Kearney has not received from the rentals and allowances any sum in excess of the rent by him paid under his lease with the owner of the building. It seems that after the expiration of Kearney's term of office the department came to the conclusion that the allowance of $300 originally made to Kearney ought to be reduced to the sum of $120, and a restatement of his account was made, in which the difference between the $300 and $120 was charged against him, and in this way it was figured that he should account to the government for the sum of $610. No evidence what-

ever has been introduced tending to show that the allowance of $300 for the portion of the premises occupied by the post office was in any sense excessive, or that the sum of $120 is fair compensation for the premises thus occupied. These allowances were made by the department, and after the close of the term of office of the postmaster his account was settled on the basis of these allowances, and the sum found due from Kearney was paid by him. It certainly cannot be expected that the court will enter judgment against Kearney and his bondsmen for the amount now claimed without some evidence showing that Kearney is in default or in the wrong; and none such has been offered. The action of the department seems to have been based upon the letter of Inspector Maher of February 8, 1897, but the statements in that letter cannot be accepted as evidence against Kearney and his bondsmen in an action of this character, and, even if it was admissible, it does not show that in fact Kearney received more than $300 as rental from the room rented by him in addition to the allowance from the government. True, it is stated therein that "the P. M. pays $55 and charges $45 per month for store space," but, taking the letter as a whole, it leaves the matter in doubt as to the amount actually received as rental for the property. Based upon the statements of the person acting as postmaster prior to Kearney's appointment the inspector states that "in times of ordinary business prosperity $45 a month would not be exorbitant for that portion used for mercantile purposes." If that be true, then clearly $25 per month would be a reasonable charge for that portion of the room occupied for the post office, and there is no ground shown for holding that the government was overcharged for the premises used for the post office, except on the theory declared on in the petition, and that is that the postmaster received from the rentals and allowances a sum in excess of the amount he paid to his lessor; and, as already said, the evidence wholly fails to show that in fact the receipts from these sources exceeded the rental paid by Kearney.

Under these circumstances it must be held that the government has failed to prove the case declared on in the petition, and judgment must go in favor of the defendants.